Cite as 2019 Ark. App. 554

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV-19-568

| | |
|---|---|
| PAMELA MIXON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** November 20, 2019<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35JV-19-14]<br><br>HONORABLE EARNEST E. BROWN, JR., JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellant Pamela Mixon appeals from the April 15, 2019 order of the Jefferson County Circuit Court granting permanent custody of four of her six children to their fathers and closing the case as it related to those children. She now asserts that the court erred in granting permanent custody to the children's fathers because she did not receive notice that permanent custody would be considered at the hearing, and she argues that the court's custody order was not in the children's best interest. We affirm.

On January 8, 2019, the Arkansas Department of Human Services (the Department) exercised an emergency hold on M.M. (born 3/16/2015) and filed a petition for emergency custody and dependency-neglect three days later. The Department initiated an investigation into the welfare of Mixon's children after Mixon was found "passed out" in a car in the Department's parking lot for over three hours with three-year-old M.M. confined to the

car; M.M was covered in sweat and was crying loudly. Mixon agreed to a drug test that day, and she tested positive for illegal substances. The petition alleged that in addition to M.M., Mixon is the mother of K.B. (born 2/08/2002), Q.B. (born 6/14/2003), K.H. (born 11/09/2004), J.H. (born 5/30/2006), and J.C. (born 9/08/2009). Mixon had legal custody of these children, but they had been in the physical custody of the following individuals for over six months: J.H. and K.H. with their legal father, Komie Henderson (Henderson); K.B. and Q.B. with their legal father, Quentin Battles (Battles); and J.C. with his paternal grandmother, Carrie Coleman. The petition also alleged this was not the first contact that the Department has had with Mixon and her children. A child-protective-services case was open from June 4, 2015, to January 20, 2016; however, Mixon did not complete the offered services—including drug assessments, housing, drug screens, home visits, substance-abuse treatment, and employment services—because she withdrew the children from school and moved, and the Arkansas Department of Child and Family Services could not locate her.

The circuit court entered an ex parte order of emergency custody on January 11. The order placed custody of M.M. with the Department and restricted Mixon from removing her children from the homes where they were living. On January 17, the circuit court held a probable-cause hearing, and it found that probable cause existed for M.M. to remain in the Department's custody, and it continued to forbid Mixon from removing the other children from their placements. Additionally, the circuit court ordered that Mixon be referred for the court's "Family Treatment Drug Court."

On February 13, the Department filed a motion to terminate reunification services as to all her children except the child it had removed, M.M. The motion alleged that because

2

the children had not lived with Mixon for an extended period, it would be detrimental to their health, safety, and well-being to attempt reunification. Thus, it requested that the circuit court change the goals for those children to relative placement.

The court conducted the adjudication hearing the next day, found the allegations in the petition to be true, and adjudicated the children dependent-neglected. Additionally, the circuit court found Battles to be the legal father of Q.B. and K.B.; Henderson to be the legal father of K.H. and J.H.; Justin Coleman to be the legal father of J.C.; and Myron Johnson to be the legal father of M.M. The circuit court further found that none of the legal fathers had contributed to the dependency-neglect of the children, set the goal of the case as reunification, and ordered all parents to comply with the case plan and court orders.

On February 21, the circuit court held a Family Treatment Drug Court hearing wherein it reviewed the case and ordered a goal of reunification with a fit parent. At this hearing, two positive drug screens were admitted into evidence, one from that day and one from the January 17 hearing. Due to Mixon's positive drug screens, the circuit court ordered that she submit to another drug screen before she left court that day; however, Mixon left the courthouse before the Department could obtain the court-ordered drug screen.

On March 14, the circuit court held another Family Treatment Drug Court hearing. Lorie Hutto, the family service worker assigned to the case, and Audrey Martin, the family service worker supervisor, both testified generally to Mixon's current status. However, both confirmed there was a delay in providing Mixon the drug-and-alcohol assessment due to the Department's changing its service provider, so there had not been much progress in the

case. Following the testimony, the circuit court placed M.M. in the temporary custody of her father, Myron Johnson.

Immediately following this hearing, the circuit court conducted a hearing on the Department's motion for no-reunification services. Martin testified that all the children besides M.M. had been in their current placements for at least six months. Martin explained that Mixon and the respective placements had been coparenting and the situation was working well with Mixon regularly exercising visitation. However, she testified that after the Department had become involved with the family, there was more stress and conflict. She explained that ordering permanent custody would be in the children's best interest because it would be traumatic to eventually remove them from their current placements; the children no longer wanted to attend court; and the children's respective placements could not make legal decisions without legal custody.

Henderson testified that he had been caring for his two children for about two years due to Mixon's instability. He said that if the motion was granted, he would still be willing to arrange visitation with Mixon. Lastly, he testified he wanted permanency because since the start of this case, Mixon had been causing turmoil between him and the kids.

Mixon testified that the children were in their current placements because she was struggling for stability. She said she was agreeable to participate in the services offered even if it included inpatient drug treatment. She also agreed with the previous testimony that she regularly participated in visitation with the children before the case was opened.

Battles testified that his two children have been in his custody for over four years. Like the previous testimony, he said that since the case had been open, there had been

turmoil, and Mixon had caused a divide between the children and him. He explained he could no longer coparent with Mixon and, because of her, he no longer had the bond he previously had with his children, especially with his oldest son, K.B., who was about to be eighteen years old.

After Battles's testimony, the court expressed from the bench its frustration with the Department for filing the no-reunification motion because it was unnecessary and inappropriate in the situation. It explained that although it was denying the Department's motion due to the high burden of proof, it found Mixon to be an unfit parent while Henderson and Battles had proved themselves to be fit parents. Accordingly, the court granted Henderson and Battles permanent custody pursuant to Arkansas Code Annotated section 9-27-327, which governs adjudication hearings. With regard to J.C., the court did not grant permanent custody with his paternal grandmother because it found that reunification with a parent took priority. The circuit court also noted that it did not find Mixon credible and that she had alienated the children from their fathers, created chaos in the families, had an unstable living situation, continued illegal drug use, and appeared to be "hazy" that day at the hearing. The court also suspended Mixon's visitation until she could stop using drugs. Once the court memorialized its ruling and entered its order, including a Rule 54(b) certificate, Mixon timely appealed.

Mixon first argues that the circuit court erred by granting permanent custody under the adjudication statute following the denial of the no-reunification motion because she lacked notice. She concedes she received notice that she had to defend against a no-reunification request and that if she was unsuccessful, a permanency-planning hearing would

5

follow changing the goal to relative placement. However, she argues that she was never put on notice that she would have to defend against a permanent-custody placement if she was successful and prevailed on the motion. She asserts that the lack of notice of any intent to pursue permanent custody without first compliance and success under the no-reunification statute resulted in a due-process violation.

Her argument is unpreserved for our review because she failed to object and failed to make her specific due-process argument below. We will not consider arguments made for the first time on appeal, even constitutional arguments, because doing so deprives the circuit court of the opportunity to fully develop the issue. *Elliott v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 526, at 6, 565 S.W.3d 487, 491.

Mixon also argues that the evidence was insufficient to demonstrate that the court's order awarding permanent custody was in the best interest of the children. In juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the circuit court's findings are clearly erroneous. *Coleman v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 851, at 10, 379 S.W.3d 778, 783–84. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id*.

In the present case, we cannot say that the circuit court clearly erred in placing K.H., J.H., Q.B., and K.B. in the custody of their fathers, Henderson and Battles. The evidence established the following. Mixon had previously placed the children with their fathers

6

because she could not provide them stability. At the February 14, 2019 adjudication hearing, the court found that neither father had contributed to the dependency-neglect of the children. K.H. and J.H. had been living with Henderson for almost two years, and Q.B. and K.B. had been living with Battles for four years. Both fathers maintained housing and employment and provided overall stability for their respective children. Throughout this time, Mixon did not have either appropriate housing or financial stability, and she abused illegal drugs, which had required previous Department intervention. Additionally, it was well established that court involvement had caused turmoil among the families and emotional distress to the children, which had not previously been an issue. The primary consideration in child-custody cases is the welfare and best interest of the children involved; all other considerations are secondary. *Coleman*, 2010 Ark. App. 851, at 12, 379 S.W.3d at 785. Because we are not left with a distinct and firm conviction that a mistake has been committed, we affirm.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.